UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| E. BRUCE STANGER, MICHAEL R. STANGER, AND KIMBERLY S. KVAMME, d/b/a SOMETIMES A GREAT NOTION LAND AND CATTLE COMPANY, a partnership,<br><br>Plaintiffs,<br><br>v.<br><br>WALKER LAND & CATTLE, LLC, an Idaho Limited Liability Company, and VISTA VALLEY AG, INC., an Idaho Corporation,<br><br>Defendants. | Case No. 4:18-cv-00307-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |
| WALKER LAND & CATTLE, LLC, an Idaho Limited Liability Company,<br><br>Counter-Claimant,<br><br>v.<br><br>E. BRUCE STANGER, MICHAEL R. STANGER, AND KIMBERLY S. KVAMME, d/b/a SOMETIMES A GREAT NOTION LAND AND CATTLE COMPANY, a partnership,<br><br>Counter-Defendants. | |

///

# I. INTRODUCTION

Pending before the Court is Plaintiffs/Counter-Defendants' Motion to Remand to State Court (Dkt. 6), Defendants/Counter-Claimants' Motion to Dismiss (Dkt. 8), and Plaintiffs/Counter-Defendants' Motion to Dismiss Claim for Contempt (Dkt. 10). The Court held oral argument on January 4, 2019, and took the various motions under advisement.[1] At the hearing, the Court also requested additional briefing from the parties on a specific issue. The Court has received and reviewed the supplemental briefs and these matters are now ripe for the Court's consideration. Upon review, the Court GRANTS Plaintiffs/Counter-Defendants' Motion to Remand, remands this case to state court, and dismisses all other motions as moot.

# II. BACKGROUND

## A. Procedural Background

With numerous pending motions—most of which overlap and are interrelated—it is somewhat difficult to ascertain the posture of the case and the various possible outcomes. Accordingly, the Court begins with a summary of the timing of the various motions and arguments.[2]

---

[1] Originally, Plaintiffs' also filed a Motion to Expedite Proceedings (Dkt. 14) which Defendants joined (Dkt. 15). The Court granted that motion at oral argument.

[2] This summary is meant to simplify and help the reader understand what is before the Court and why. It is not meant to be all-inclusive or a legal analysis of any particular issue.

On July 13, 2018, Defendant/ Counter-Claimant Walker Land & Cattle, LLC[3] removed this action to federal court. Walker Land & Cattle's purported basis for removal was that the case involves a federal question—namely its counter-claim for contempt. That claim is based upon Walker Land & Cattle's former bankruptcy case (CV-13-41437-JDP) and SAGN's perceived violations of the confirmed plan in that case.[4]

On July 31, 2018, SAGN filed a Motion to Remand this matter to state court. In its motion, SAGN alleges that this Court lacks jurisdiction because the underlying claims are all state law claims and Walker Land & Cattle's counter-claim is without merit and was only introduced to "shoehorn" this case into federal court.

In repose to SAGN's Motion to Remand, Walker Land & Cattle argues that because SAGN asks the Court to make a ruling on the merits of its counter-claim, SAGN's motion is really a motion to dismiss, not a motion to remand, and thus improper.

Contemporaneously, Walker Land & Cattle filed its own motion to dismiss arguing that the underlying bankruptcy case prohibits this lawsuit (specifically that it prohibits the underlying state court claims) vis-à-vis various provisions in the confirmed plan, stays, and other orders from the prior bankruptcy case. Alternatively, Walker Land & Cattle asked the Court to simply enforce the plan injunction—even if it is unwilling to

---

[3] While each party is also a "counter" party in light of the counter-claim, the Court will refer to each by their underlying designation—Stanger et al. and Sometimes a Great Notion Land and Cattle Company as "Plaintiffs" or "SAGN" and Walker Land & Cattle, LLC, as "Defendants" or "Walker Land & Cattle."

[4] As will be outlined in the "factual background" section, these two parties have been closely affiliated for many years. SAGN was—and is—an integral part of Walker Land & Cattle's bankruptcy proceedings.

MEMORANDUM DECISION AND ORDER - 3

dismiss the case—and "block" this action by SAGN.

In response to Walker Land & Cattle's Motion to Dismiss, SAGN filed a single document that served as both an objection to Walker Land & Cattle's motion but also—apparently harkening back to Walker Land & Cattle's criticism that SAGN's Motion to Remand was more of a motion to dismiss—its own Motion to Dismiss Walker Land & Cattle's counter-claim for contempt under Rule 12(b)(6). [5]

Finally, SAGN filed a Motion to Expedite proceedings—which Walker Land & Cattle joined—asking the Court to take up these matters as quickly as possibly considering the fast approaching spring planting season. The Court GRANTED this Motion at the hearing.

B.  Factual Background

Plaintiffs E. Bruce Stanger, Michael R. Stanger, and Kimberly S. Kvamme are siblings and partners in the ownership of Sometimes A Great Notion Land and Cattle Company, a general partnership that manages 800 acres of farm ground located near Ririe, Idaho. Defendant, Walker Land & Cattle is an Idaho limited liability company based in Idaho Falls, Idaho. Over the years, Walker Land and Cattle has leased farm ground from SAGN.

---

[5] This is a prime example of the difficulties in this case. Walker Land & Cattle argues that this court has jurisdiction and then asks the Court to dismiss this *federal* case or bar SAGN from filing in s*tate court* based upon rulings in the previous *bankruptcy* case. SAGN claims the Court does not have jurisdiction, but likewise asks the Court to make determinations regarding claims in the case. The interplay between the bankruptcy rulings, the state court claims, and the counter-claim—not to mention the jurisdictional issues—makes it extremely difficult to determine where to begin in this case. Ultimately, the Court must begin with the threshold question of jurisdiction.

MEMORANDUM DECISION AND ORDER - 4

In 2012, the parties were co-owners of real property located in Osgood, Idaho (the "Osgood Farm") and co-owners of real property located in Ririe, Idaho (the "Ririe Farm"). On August 2, 2012, Walker Land & Cattle entered into a lease agreement whereby it agreed to lease SAGN's undivided one-half tenancy in common interest in the Osgood Farm and the Ririe Farm for a term of 25 years, with the term expiring November 20, 2037, subject to an Option to Renew for an additional 5 years through November 20, 2042.

On November 15, 2013, Walker Land & Cattle filed a voluntary petition for reorganization under Chapter 11.

During the course of the bankruptcy proceedings, Walker Land & Cattle indicated its intention to assume the farm lease (executed on August 2, 2012) and continue farming the Osgood and Ririe Farms.

SAGN objected to the assumption of the farm lease, but on April 3, 2015, the bankruptcy court entered an order confirming Walker Land & Cattle's third amended plan of reorganization, which included assumption by Walker Land & Cattle of the August 2, 2012, farm lease.

In April 2016, the parties agreed to divide the two farms between them, with Walker Land & Cattle receiving the Osgood Farm and SAGN receiving the Ririe Farm.

On April 25, 2016, the parties signed the Partition Agreement with Amended and Restated Farm Lease. A condition precedent to closing was Walker Land & Cattle entering into an agreement to sell the Osgood Farm to an unrelated third party to facilitate plan payments. The condition precedent was satisfied.

The Partition Agreement with Amended and Restated Farm Lease also provided that Walker Land & Cattle would lease the Ririe Farm from SAGN.

According to SAGN, over the next two years Walker Land & Cattle failed to keep up the property per contract requirements and did not make necessary repairs. These actions resulted in various Notices of Default and ultimately the underlying lawsuit in state court for breach of contract, declaratory judgment, quiet title, and ejectment—all state law claims. For its part, Walker Land & Cattle asserts that it made all necessary repairs and that SAGN is simply trying to get out of the lease so that it can find a new tenant who will pay more in leasing fees.

### III. LEGAL STANDARD

A. Motion to Remand

The removal of a case from state court to federal court is governed by 28 U.S.C. §§ 1441-1455. These statutes outline when removal is proper and the relevant procedures that must take place to effectuate removal.

Under 28 U.S.C. § 1441(a), only cases "of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . " to federal court.

Under 28 U.S.C. § 1452, a party can remove any claim related to a bankruptcy case *if* the District Court would have jurisdiction under 28 U.S.C. § 1334 to begin with. Section 1334 in turn gives federal courts jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1443(b).

B. Motion to Dismiss 12(b)(1)[6]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

C. Motion to Dismiss 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*,

---

[6] Technically neither party has filed a Motion to Dismiss under Rule 12(b)(1), however, this principle underlies the Motion to Remand.

MEMORANDUM DECISION AND ORDER - 7

534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

## IV. DISCUSSION

SAGN contends that this Court does not have jurisdiction because Walker Land & Cattle's counter-claim is meritless and the underlying state law claims do not relate to Walker Land & Cattle's bankruptcy case or the confirmed plan in the first place. Walker Land and Cattle, on the other hand, asserts that not only does its counter-claim give rise to federal jurisdiction, but the underlying state case is so intertwined with the prior bankruptcy case, federal jurisdiction is necessary. The Court is more concerned with original jurisdiction overall. Once that is determined, the Court will analyze the specifics of each sides' arguments as to the underlying claims.

Jurisdiction—specifically whether a counter-claim can serve as the basis for subject matter jurisdiction—was the subject of the Court's inquiry that required additional briefing.

Walker Land & Cattle petitioned for removal of this case to federal court under 28 U.S.C. § 1452. Section 1452 states that an action may be removed "to the district court

for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." District courts have jurisdiction under § 1334 over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334.

An action originally brought in state court may therefore be removed to federal district court on the basis of bankruptcy jurisdiction under 28 U.S.C. § 1334 if it "arises under" or "arises in" title 11. However, jurisdiction under § 1334 is determined based on the "well-pleaded" allegations of the complaint.

Under the "well-pleaded" complaint rule, "the federal question, which invokes federal jurisdiction, must appear from the complaint and not from any federal defense the defendant might raise to defeat the claim." *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986). Walker Land & Cattle does not dispute that under the well-pleaded complaint rule normally[7] a counter-claim *cannot* serve as the basis for removal. Recognizing this, Walker Land & Cattle nonetheless argues that a party cannot "artfully plead" their complaint in such a way as to avoid federal jurisdiction when federal issues are really involved. *See id.* This is an accurate reading of the applicable law; however, the Court finds it does not fit the circumstances here. SAGN has not artfully pleaded its way

---

[7] There are some circumstances in which the "well-pleaded" complaint rule takes on certain nuances, however, none of those are applicable here. *See e.g. Pozez v. Clean Energy Capital, LLC*, 593 F. App'x 631, 632 (9th Cir. 2015) (finding a difference in the well-pleaded complaint rule as between diversity jurisdiction and federal question jurisdiction when calculating the amount in controversy).

around federal jurisdiction, nor is its state court complaint "fram[ed] [] under state law" but "in actuality rais[ing] an essential federal question." *Holcomb v. Bingham Toyota*, 871 F.2d 109, 110 (9th Cir. 1989). SAGN's complaint alleges four causes of action—all of which are state law claims based upon the interpretation of a lease. There is no artful pleading here. Absent the extenuating circumstances of this case, there is little question that these claims themselves would never give rise to federal jurisdiction and would be dealt with in state court.

Taking more of an equitable approach, Walker Land & Cattle further alleges that under *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310 (2005), federal jurisdiction is present if a federal forum is better suited to deal with significant federal issues in a particular case. Again, the Court agrees with this logic, but not its application in this case. The claims here are contract claims that are better dealt with in state court. As will be explained in greater detail below, the Court further disagrees that the claims here substantially implicate, or impact, the bankruptcy case and proceedings.

Thus, after a careful review, the Court does not find that Walker Land and Cattle's counter-claim *by itself* creates federal jurisdiction.[8] Accordingly, the Court must continue

---

[8] Because Walker Land & Cattle filed its answer and counter-claim simultaneously, it is not entirely clear if it thought it needed the counter-claim to get into federal court or if it believed the underlying subject matter was sufficiently related to the bankruptcy case that those claims alone required federal jurisdiction. Regardless, because the Court finds that Walker Land & Cattle's counter-claim cannot serve as the basis for removal alone, the Court must analyze whether it has jurisdiction based on SAGN's complaint.

its inquiry. Additionally, because the Court does not have original jurisdiction over the counter-claim, nor (as will be explained) does the Court have jurisdiction over the underlying case (and subsequently any counter-claims) the Court will not weigh in on the merits of Walker Land and Cattle's counter-claim for contempt.[9]

The Court next turns to whether it has jurisdiction over this case based upon SAGN's claims and any relatedness to Walker Land & Cattle's prior bankruptcy case.

Courts have held that "the test for determining whether a civil proceeding is 'related to' a bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Gardner v. United States*, 913 F.2d 1515, 1518 (10th Cir. 1990) (*quoting Pacor*, *Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). A civil action is not "related to" a bankruptcy proceeding if the proceeding cannot affect the debtor's rights such as to impact the "handling and administration" of the bankruptcy estate. *Pacor*, at 994 (finding a breach of contract claim unrelated where the debtor's bankruptcy estate was closed).

The Ninth Circuit Court of Appeals generally applies the *Pacor* test for determining the scope of "related to" jurisdiction. *See In Re Marshall*, 600 F.3d 1037, 1055 (9th Cir. 2010). However, when a Chapter 11 plan has already been confirmed, the Ninth Circuit Court of Appeals applies a narrower "close nexus" standard. In the case of

---

[9] In other words, while both parties argue at length about the claim for contempt (hence all of the motions related to it) and whether it invokes jurisdiction, the real question is whether the Court has jurisdiction in the first place. That question goes to the underlying claims and any interplay with the bankruptcy case, absent any considerations of the claim for contempt.

*In re Pegasus Gold Corp.*, the Ninth Circuit stated that "related to" jurisdiction would only be exercised when the claims were closely related to the confirmed plan. 394 F.3d 1189, 1194 (9th Cir. 2005). Matters that affect the "interpretation, implementation, consummation, execution, or administration of the confirmed plan" will typically have the requisite close nexus. *Id.* (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-167 (3rd Cir. 2004)).

Here, SAGN puts forth numerous arguments in support of its position that this case does relate closely enough to the bankruptcy proceedings to give this court jurisdiction. While many of these arguments are introduced in SAGN's Motion to Remand, as the case (and the motions) evolved, the principles were explained and expanded upon in other motions. The Court will therefore discuss multiple topics as overall principles rather than arguments in support of a particular motion.[10] The overarching question remains: does SAGN's lawsuit in state court sufficiently relate to the bankruptcy case that this Court can assume jurisdiction?

In support of its position, SAGN points out that it has not alleged any claims related to Walker Land & Cattle's bankruptcy plan in its Complaint. Its claims are for breach of contract and other equitable remedies, and while that relationship may stem from a bankruptcy case, it is SAGN's position that the present action is not related.

Walker Land & Cattle, on the other hand, contends that these claims are

---

[10] The Court chooses to do this even though it ultimately will be dismissing the motions wherein many of these arguments are found because the substance of all of the motions nonetheless applies to the current discussion.

intrinsically related to the bankruptcy plan even if the actions do not stem from matters directly involved in the bankruptcy itself. Insofar as each party's actions relate to the confirmed bankruptcy plan, Walker Land & Cattle claims that the bankruptcy proceedings are highly relevant and SAGN is trying to file these actions in state court to avoid pre-existing conditions. Citing *Wilshire Courtyard v. Cal. Franchise Tax Bd.*, 729 F.3d 1279 (9th Cir. 2013), Walker Land & Cattle points out that the Ninth Circuit has determined that "[a] bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." *Id.* at 1287 (citations omitted). In Walker Land & Cattle's estimation, because SAGN's causes of actions arise out of the lease provisions of a contract that was signed during the bankruptcy, the claims are interconnected with the bankruptcy and must proceed in federal court.

One of biggest disputes in this case is whether the 2016 lease agreement is "included" in the bankruptcy plan, and thus related to the instant conduct and lawsuit sufficiently to afford this court jurisdiction.[11]

To review: there was a 2012 agreement between the parties relative to the use of the Ririe and Osgood farms. In 2013, Walker Land & Cattle filed for bankruptcy. In

---

[11] The reality is that the parties brought this topic up in in their respective Motion for Contempt and Motion to Dismiss. Walker Land & Cattle alleges that the 2016 lease is only a renewal of the 2012 lease, is included in the plan, and any action now is against that plan (i.e. is contempt or must be dismissed in favor of enforcing the provisions of the plan). SAGN alleges that the 2016 lease is a new lease and not covered by the plan (i.e. they are not barred from bringing suit and not in contempt). While the results the parties are looking for (dismissal, contempt, etc.) are not available at this time (as the Court must first obtain jurisdiction to address these matters) the substance of these arguments is relevant to whether the Court has jurisdiction in the first place.

2015, the Court entered its Confirmation and Assumption Order which allowed Walker Land and Cattle to assume the 2012 lease. In 2016, the parties signed a document entitled "Partition Agreement with Amended and Restated Farm Lease." This document split the farms between the two parties and outlined that Walker Land & Cattle would lease the Ririe Farm from SAGN.

SAGN claims that this document—the Partition Agreement with Amended and Restated Farm Lease—is a new contract because it involves a different property and different terms, and there is specific language in the lease that it [the lease] "supersedes" any other leases. Because the parties signed this document after the confirmed plan was in place, SAGN contends that it is a post-confirmation lease and has nothing to do with the bankruptcy proceedings. Conversely, Walker Land & Cattle argues that the agreement is nothing more than an amendment to the 2012 lease—as the title "Amended and Restated" suggests—and that any modifications in the lease were made simply to reflect that the Osgood property has been sold and the lease only applied to the Ririe property. In other words, according to Walker Land & Cattle, the 2016 lease is not a new contract and even though it was signed after the bankruptcy plan was in place, it was signed for clerical and organizational purposes—nothing of substance changed.

The Court understands Walker Land & Cattle's argument, but simply put, the amended lease is a new contract. And while extremely similar to the 2012 lease, its provisions govern the relationship between the parties. The 2016 contract required certain behavior between the parties that ultimately had no effect on the bankruptcy

proceedings.[12] That contract superseded the 2012 contract and while the outcome was to further both parties' interest (monetarily) in the bankruptcy proceedings, it was—at a foundational level—nothing more than a contract agreement between parties. When problems with that contract arise, that is a cause of action unrelated to the bankruptcy proceedings and cannot be forced into federal court.

Most of the remaining arguments raised by both parties in support of—or against—the interconnectedness of the underlying claims and the bankruptcy case are more focused on the claim for contempt.[13] As the Court has already determined, however, that claim cannot form the basis for federal jurisdiction. It is difficult, however, to determine if the Court should entertain and address such arguments. On the one hand, many are raised solely in support of a motion which will not be considered by the Court. On the other hand, some of the allegations and arguments found in those motions go more to the substance of the state law claims and the Court's analysis regarding the

---

[12] In the aggregate, actions taken may ultimately affect the bankruptcy plan (if Walker Land & Cattle lose the lease for example, they may not bring in as much revenue and be able to pay creditors as timely) but the provisions of that lease are not *tied* to the bankruptcy case in any meaningful way. SAGN is not a party to the bankruptcy. The fact remains, the parties entered into the 2016 agreement to solve some of the bankruptcy issues (monies owning between the parties) but its enforcement, provisions, terms, and outcome are not tied to the bankruptcy estate. To force a party to litigate civil contract matters in federal court or bankruptcy court simply because the impetus of the agreement took place during a bankruptcy case is a position this Court is unwilling to take.

[13] For example, the parties discuss at length whether there is a stay or injunction in this matter, or what the scope and reach of the confirmed plan really is; but again, these arguments are raised and debated in the context of whether SAGN has violated (i.e. been in contempt) of some provision within the prior bankruptcy case. They are *not* raised for purposes of establishing original jurisdiction. The claim that each of those arguments purportedly relate to *cannot* form the basis for federal jurisdiction, therefore the Court declines to address them.

relationship between those claims and the bankruptcy case.

Now, from a purely logical standpoint it is hard to say that these issues are not related. These parties have been involved with each other for years—before, during, and after Walker Land & Cattle's bankruptcy—and the actions here relate (in the common sense of the word) to things that the parties discussed, decided, and outlined during the bankruptcy proceedings. That being said, the legal action here—state law claims based upon general contract provisions—do not bear on the bankruptcy proceedings. Regardless of whether SAGN prevails or fails in its suit, it will not affect the bankruptcy proceedings because it does not directly affect the "interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Pegasus Gold Corp*, 394 F.3d at 1194.

In short, the 2016 lease does not have the requisite "close nexus" to the bankruptcy proceedings for this Court to have jurisdiction. That contract—*which forms the base of all SAGN's claims*—was signed by the parties after the confirmed plan was in place and is simply a farm lease agreement between two parties. While the substance of the contract (the land, the parties, the purpose) is clearly associated with the bankruptcy estate (as the same parties and land are involved there) the legal principles at issue (i.e. the case in state court) is not directly linked to the bankruptcy case or the confirmed plan. The Court, therefore, declines jurisdiction on these grounds.

Finally, the Court declines to exercise jurisdiction on equitable grounds. Under 28 U.S.C. § 1452, "the court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable ground*." 28 U.S.C. § 1452(b) (emphasis

added). Here, it appears that there are two courts far better suited to handle the present issues: the Idaho state court or the federal bankruptcy court. Under this "usually broad grant of authority" the Court finds that the most equitable place for these claims to be heard is in Idaho state court. *In re McCarthy*, 230 B.R. 414, 417 (9th Cir. 1999).

Relatedly, the Court must discuss one final item raised in the supplemental briefs. Based upon Walker Land & Cattle's brief, it appears its requested relief has slightly changed. While the idea of referring this case to federal bankruptcy court is mentioned in passing in some of the moving papers below—and was brought up at oral argument—it seemed to be nothing more than one of many possible solutions. However, Walker Land & Cattle now affirmatively asks the Court to not only deny SAGN's motion to remand to state court, but to refer this matter in its entirety to the bankruptcy court under one of the District of Idaho's General Orders.

The Court declines to do this for the same reason it declines to take jurisdiction itself. Referring this matter to bankruptcy court does not solve the underlying federal jurisdiction deficiencies. "Reopening of the bankruptcy case is rare, and only used when necessary to resolve bankruptcy issues, not to adjudicate state law claims that can be adjudicated in state court." *In re Ray*, 624 F.3d 1124, 1136 (9th Cir. 2010). To reiterate, the issues here are state law claims—and there is no independent federal jurisdiction— thus the most proper forum to address these issues is in Idaho state court.[14]

---

[14] Walker Land & Cattle fears that the state court is ill-equipped to handle its counter-claim for contempt

## V. CONCLUSION

Upon review of the applicable legal standard, it is the Court's determination that it lacks jurisdiction to hear these claims. Additionally, in its discretion, it finds that Idaho state court is better suited to hear a lawsuit comprised solely of state law claims.

Because the Court finds that it does not have jurisdiction, it does not reach the merits of Walker Land & Cattle's Motion to Dismiss based upon Rule 12(b)(6), the so-called "Plan Injunction," or any of the other arguments. Likewise, the Court will not weigh in on the validity of Walker Land & Cattle's claim for contempt, nor SAGN's Motion to Dismiss the same.

## VI. ORDER

**IT IS ORDERED:**

1. SAGN's Motion to Remand to State Court (Dkt. 6) is **GRANTED**. This case is hereby **REMANDED TO STATE COURT.**

2. Walker Land & Cattle's Motion to Dismiss (Dkt. 8) and SAGN's Motion to Dismiss Claim for Contempt (Dkt. 10) are **DISMISSED AS MOOT**.

DATED: March 4, 2019

David C. Nye
Chief U.S. District Court Judge

---

which goes directly to issues from the bankruptcy case. The Court takes no position on this issue. Walker Land & Cattle can pursue this claim when and where it sees fit, but just as the parties briefed that issue before this Court (and expected a decision), so too can they brief it before a state court (and likewise receive a reasonable decision).